**Jenkins v. Jenkins**

*Frederick R. Gutshall*, for plaintiff.
*R. Merle Heffner*, for defendant.

TAYLOR, *P.J.*, February 28, 1983—

### FINDINGS OF FACTS

1. Plaintiff John L. Jenkins resides at 102-B West Shirley Street, Mount Union, Huntingdon County, Pa.

2. Defendant Huguette Jenkins resides at R.D. 1, Box 222-C, Mount Union, Huntingdon County, Pa.

3. Plaintiff and defendant were married on June 17, 1959 at Nancy, France.

4. Plaintiff and defendant separated in January of 1977.

5. Shortly after the separation, defendant obtained a court order from this court for support. This order, with subsequent modifications not directly relevant to the issues here, is still in effect.

6. In late 1979, plaintiff, who was in the military service, was transferred to Giessen, West Germany.

7. In late May or early June, 1981, defendant stayed with plaintiff at his apartment in Giessen.

Defendant stayed at the apartment between two and three weeks.

8. During this stay, the parties slept in plaintiff's single bed and had sexual relations at least once every night.

9. On July 2, 1982, plaintiff filed an action for divorce under §201(d) of the Divorce Code alleging that the parties had lived separate and apart for a period of three years as required by the statute. By this time he had retired from the military.

10. On August 3, 1982, an answer and new matter was filed by defendant alleging that the three year period had been broken by the parties conduct during defendant's 1981 stay at plaintiff's apartment.

11. Plaintiff filed his answer to new matter denying defendant's allegations on August 20, 1982.

12. On November 9, 1982, a hearing was conducted before this court at which plaintiff and defendant were the only witnesses.

13. The parties' testimony conflicted sharply, especially regarding whether or not sexual relations had occurred between the parties during defendant's 1981 stay at plaintiff's apartment and the extent of the visit.

14. The court finds defendant-wife's testimony to be entirely credible and accepts it in full over the testimony of plaintiff as to the visit in Giessen in May-June, 1981, its length and the activities of the parties.

15. The court rejects plaintiff-husband's testimony as to these matters as not credible.

## DISCUSSION

The only testimony taken was that of plaintiff-husband and defendant-wife. Both agreed that defendant paid plaintiff a visit at his military base in

Giessen, West Germany. The wife, a naturalized citizen of French ancestry, had gone to Europe for a definite period to visit her family in Nancy, France, and also to visit a son of the parties who was also in the military service in Germany. The wife had purchased a roundtrip ticket prior to leaving Huntingdon County, so her visit to Europe was of a definite duration. Her return, of course, could have been changed but was not. From that point the testimony differed substantially. Plaintiff testified that the visit lasted a few days at the most while defendant testified that she visited plaintiff for two or three weeks. There was also a dispute as to whether the visit took place in late May or early June of 1981 or both. However, the most significant disagreement in the testimony was that regarding the sleeping arrangements during the visit. Plaintiff testified that even though defendant shared his apartment as well as his bedroom, no sexual relations took place. Defendant testified that she stayed in plaintiff's apartment while visiting him and that the parties had sexual relations at least once every night.

Obviously, there is an issue of credibility to be resolved. After observing the demeanor of each party while testifying and considering the testimony presented, the court concludes that the testimony of defendant is credible. The court finds plaintiff's testimony not credible, especially with regard to the question of whether sexual relations were engaged in by the parties and the length of the visit and the nature of their living arrangement. The court believes defendant that the parties engaged in extensive sexual relations and a marital living arrangement over a period of two to three weeks as testified to by defendant. Therefore, the effect of this living arrangement on the pending divorce must now be considered.

The Pennsylvania Divorce Code, 23 P.S. §104, defines "separate and apart" as "complete cessation of any and all cohabitation." Because the statute is relatively new, little interpretation of that definition can be found. However, Norman Perlberger in Pennsylvania Divorce Code §2.4.10 states the possible consequences of the requirement:

The definition under the Act requires "complete cessation of any and all cohabitation." To the extent that our judiciary will seek a conservative and strict interpretation of this phrase, "separate and apart" may prove a most formidable element barring relief to many litigants. Public attitude towards marriage, divorce and the family as an institution will undoubtedly dictate what importance this term will have in future litigation.

A conservative interpretation appears warranted by the legislative language. It is axiomatic that in interpreting a statute, the judiciary is to assume that the legislature did not seek to write in surplusage. The absolute nature of this definition is reiterated not once or twice, but three times in the definition—"complete," "any" and "all."

Of course, what remains to be decided is the meaning of cohabitation. In his brief, plaintiff cites the definition of cohabitation given in Ballentine's Law Dictionary as "openly living together by a man and woman as husband and wife, not merely sexual intercourse. The living together of a man and woman ostensibly as husband and wife." However, this definition can only be a starting point, for jurisdictions have differed on the weight of various factors and, indeed, the factors themselves that constitute "living together as husband and wife."

There is a body of existing law in Pennsylvania dealing with desertion as grounds for divorce, its requirements and defenses to it. This court believes that looking to that body of law may provide some guidance in deciding the action now before it.

Our courts have held that, "Desertion must not only be wilful and malicious, but also continuous and uninterrupted for two years to be effectual as a cause for divorce. Desertion will not lie as a ground for a divorce if the continuation of the two year period is broken by the parties living together in family relation, no matter how brief such interruption may be." Johnson v. Johnson, 156 Pa. Super. 447, 452, 171 A. 2d 638, 641 (1961). See also Smith v. Smith, 205 Pa. Super. 402, 208 A. 2d 915 (1965); Troianowski v. Troianowski, 155 Pa. Super. 110, 12, 38 A. 2d 367, 368 (1944). In Trussel v. Trussel, 116 Pa. Super. 592, 177 A. 215 (1935), the court stated that "it is well established that when the alleged deserting wife comes to her husband and has marital intercourse with him, that breaks the continuity of desertion." Id. at 601, 177 A. at 219.

While the court believes that the Divorce Code's definition of "separate and apart" is not necessarily as restrictive as the prior existing case law on desertion, that older law can be drawn on for some guidance in dealing with the code. The facts of this case and of those in the Johnson case are strikingly similar. In both there is a conflict in the testimony regarding whether or not the parties engaged in sexual intercourse. The court in Johnson hinged its decision against granting a divorce, to a great extent, on its conclusion that the parties did have marital relations. From the above cases, it seems that even a single act of intercourse will serve to defeat a divorce sought on desertion grounds in

Pennsylvania. Again, this court is unwilling to interpret the new code in so restrictive a manner.

Plaintiff has cited cases from the neighboring State of New Jersey, which are more lenient regarding sexual relations between separated spouses who seek divorce. See Antonucti v. Antonucti, 124 N.J. Super. 544, 308 A. 2d 46 (1973); and Brittner v. Brittner, 124 N.J. Super. 259, 306 A. 2d 83 (1973). Of course, those cases are helpful but are not binding on this court. Instead, the court believes the new law must be approached and interpreted on a case-by-case basis.

Plaintiff argues that a mere social visit should not serve to defeat a divorce action. Parties should be allowed to visit with one another in the hope of eventually coming to a reconciliation. The court agrees with this argument. Encouraging such contact serves the best interests of both spouses as well as the public policy toward preserving marriages and also in ending marriages, particularly those with children as amiably as possible. A mere social visit should not toll the statute in a §201(d) action. However, we are dealing here not with a short visit, but with an extended one. This fact, along with the court's finding that the parties did engage in an extensive sexual relationship and a marital living arrangement of some 20 days takes this case out of the realm of a social visit. The court feels very strongly that to rule that these actions did not toll the statute would result in this court's taking flagrant liberties with the statutory language and the legislative intent behind the Divorce Code. Such a distorted and twisted interpretation would amount to a usurpation of the legislature by this court.

At the same time, the court does not believe the above stated policy toward preserving marriages and encouraging reconciliation is thwarted by the

court's decision in this case. There is a difference between social contacts and visits and what occurred in this case. Again, a mere social visit should not toll the statute. By the same token, perhaps a single act of intercourse should not toll it either. Courts must take the entire circumstances of each case into account.

## CONCLUSIONS OF LAW

1. The parties' conduct during defendant's stay with plaintiff in Germany amounts to cohabitation.

2. Because the parties cohabitated during the three year period required for a 201(d) divorce action, and the period since the cohabitation has been only 20 months, the divorce must be denied at this time.

## ORDER

Now, February 28, 1983, for the reasons set forth in the opinion filed this date in the within case, the motion of plaintiff, John L. Jenkins, for a divorce under Section 201(d) of the Divorce Code of 1980 is denied inasmuch as the court has found that the parties have been separated for a period of only 20 months whereas the law requires a continuous separation for at least 36 months.